United States District Court
Southern District of Texas
**ENTERED**
November 24, 2025
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| Tremaine Gordon and | § | |
| Cynthia L. Covington | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action H-22-4109 |
| | § | |
| Lowe's Home Centers, | § | |
| LLC, et al. | § | |
| *Defendants.* | § | |

## MEMORANDUM AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 3. Pending before the court are: Defendant Lowe's Home Centers, LLC's (Lowe's) Motion for Summary Judgment on Tremaine Gordon's Claims, ECF No. 103; Defendant Thomas Willtrout's Motion for Summary Judgment on Tremaine Gordon's Claims, ECF No. 104; Defendants' Motion to Sever Plaintiffs' Claims, ECF No. 105; and Defendants' Objections to Gordon's Declaration, ECF No. 117.

The court recommends that Lowe's and Willtrout's summary judgment motions, ECF Nos. 103 and 104, be **GRANTED**. Because the court's conclusions are not impacted by consideration of Plaintiff's summary judgment evidence, Defendant's objections are **DENIED** as **MOOT**. The Motion to Sever is also **DENIED** as **MOOT**.

### 1. Background

Plaintiff Tremaine Gordon filed suit against Lowe's, Thomas Willtrout, and Goldie Nickelson on November 27, 2022. ECF No. 1. Gordon alleged many causes of action related to disability, race, and gender discrimination and interference with leave under various statutes. *Id.* On Motions for Summary Judgment, the court

previously considered each of Gordon's claims. ECF No. 96. The court issued a Memorandum and Recommendation (M&R) recommending that Lowe's and Willtrout's Motions for Summary Judgment be granted as to all of Gordon's claims. *Id.* Gordon filed objections to the M&R raising new arguments that were not previously raised before the undersigned. ECF No. 98. Judge Tipton adopted the portions of the M&R to which no objections were made. ECF No. 100 at 2–3. Judge Tipton did not consider new arguments or evidence raised for the first time in the objections and ordered that "Defendants shall . . . refile any motions for summary judgment to address the arguments and claims addressed in Plaintiff's objections." *Id.* at 3. Thus, Gordon's only remaining claims are those under the Families First Coronavirus Response Act (FFCRA, Pub. L. No. 116-127 (2020)), and 42 U.S.C. § 1981. *Id.* at 3 (terminating without prejudice the summary judgment motions as to Gordon's FFCRA and § 1981 claims).

The court briefly restates the relevant background here. Gordon began working for Lowe's in 2000. Gordon's First Decl., ECF No. 81-32 ¶ 2. In 2020, Gordon was a Department Manager for Install Services. *Id.* ¶ 3. Goldie Nickelson was Gordon's direct supervisor, and Thomas "Trey" Willtrout was the Store Manager. *Id.* ¶¶ 7, 9.

Gordon states in a declaration that Nickelson was disrespectful to her, that he deliberately ignored her medical concerns, and that he would scream at her in public. ECF No. 111-1 ¶ 7. An employee told Lowe's Associate Relations that Nickelson acted "ugly in general" and that he was "rude for no reason." ECF No. 81-35 at 20–21. Another employee stated that Nickelson was arrogant and ran the team like a dictatorship. *Id.* at 24. That employee stated that if anyone spoke up, they became Nickelson's target. *Id.*

Gordon states that Nickelson showed disdain for women and people with disabilities. ECF No. 81-32 ¶¶ 7–8. Gordon observed Nickelson treat Black women worse than he treated other employees. ECF No. 111-1 ¶¶ 5–6. Gordon states that she observed Nickelson treat "Terrell Ringer, Cynthia Covington, Tonya, and Tasha worse than he treated other employees who were not Black women." *Id.* ¶ 6. Gordon explains that Nickelson targeted Black women for mistreatment, "bossed around" Black women, and seemingly "did not like for Black women to have a voice or authority." *Id.* ¶ 8.

In March and April 2020, during the COVID-19 pandemic, Gordon did not feel comfortable in a cashier position at Lowe's because she was at high risk for serious illness based on her high blood pressure and diabetes. *Id.* ¶¶ 13–14.

On March 24, 2020, Nickelson asked Gordon to work the front register, and Gordon "told him [she'd] rather not given [she] was practicing social distancing due to the pandemic." ECF No. 81-32 ¶ 16. Nickelson insisted, and Gordon asked how long she would need to work the register. *Id.* Nickelson told Gordon to stay there "until he said so." *Id.*

Gordon spoke with Twila Bradford in Lowe's Human Resources about the incident with Nickelson. ECF No. 81-32 ¶ 17. Gordon "specifically told Ms. Bradford that [she] believed Mr. Nickelson was treating [her] worse because [she] was a black woman." ECF No. 111-1 ¶ 10. Bradford informed the Store Manager, Willtrout, about the incident, and Willtrout told Gordon to take her lunch break instead of working the register. ECF No. 81-32 ¶ 17.

Nickelson later confronted Gordon about her complaint. ECF No. 81-32 ¶ 18. Nickelson showed Gordon that a complaint had been made against him and told Gordon that he knew she had "called in" against him. *Id.*

Soon after the March 24th incident, Gordon spoke with the Lowe's District Manager about her health concerns, and he suggested she talk with Willtrout about taking medical leave. ECF No. 81-32 ¶ 19. Gordon testified that she tried to talk to Willtrout about taking leave on multiple occasions over a few days. ECF No. 81-38 at 160:3–24. Willtrout responded multiple times by saying, "Okay. I'm going to talk to you." *Id.* Instead, Willtrout never followed up with Gordon and "[i]t was kind of like he was avoiding [Gordon] for a long period of time[.]" *Id.* at 160:21–22.

According to Gordon, Willtrout intentionally avoided her "so that he would not have to hear and handle [her] accommodations request." ECF No. 81-32 ¶ 20. Gordon stated that she could never submit an emergency paid leave request to Lowe's because Lowe's required Gordon to obtain Willtrout's approval prior to submitting the online form. ECF No. 81-38 at 162:21–25. Gordon also stated that Willtrout told staff in a morning meeting that "If you're trying to take a leave, you're not going to get approved because it has to go through me. You're not going to get paid, if you are trying to take a leave." *Id.* at 166:18–22.

The court notes that Lowe's Emergency Paid Leave Procedure, which Gordon submitted to the court, stated that if an employee was unable to access the online HR portal to request emergency paid leave, they could call the Associate Care Center to request emergency paid leave. ECF No. 103-5 at 6.

On April 2, 2020, a different manager asked Gordon to work the cash registers. ECF No. 81-32 ¶ 22. Gordon refused. *Id.* After this refusal, the District Manager, who was in the store that day, recommended that Gordon be terminated for insubordination. ECF No. 81-31 at 210:21–212:6. According to the District Manager, Gordon refused to work the register and, despite management's attempt to "get everyone we can to cashier[,]" Gordon stated that she "was not going to the front[.]" ECF No. 81-35 at 25.

4

Willtrout supported the recommendation that Gordon be terminated. ECF No. 81-31 at 210:21–212:6. Nickelson wrote the recommendation and sent it to Associate Relations, and Courtney Fuller in Associate Relations approved the termination. *Id.* Gordon was terminated on April 7, 2020. ECF No. 81-32 ¶ 23.

Lowe's and Willtrout now move for summary judgment on the remaining claims against them. Lowe's Mot. Summ. J., ECF No. 103; Willtrout's Mot. Summ. J., ECF No. 104. Gordon filed three documents in response to Lowe's and Willtrout's motions. ECF Nos. 111, 113, and 114. The documents appear to be identical. For clarity, the court refers only to the first-filed response, ECF No. 111.

### 2. *Evidentiary Objections*

On summary judgment, a party may object to exhibits that "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)). Declarations are competent summary judgment evidence if they are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Lowe's and Willtrout object to Gordon's Declarations. ECF No. 117. Even considering all of Gordon's evidence, the court recommends that Lowe's and Willtrout's Motions for Summary Judgment be granted. Accordingly, Lowe's objections are **DENIED** as **MOOT**.

### 3. *Summary Judgment Standard*

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport*

*v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must then "go beyond the pleadings," using competent summary judgment evidence to cite "specific facts" showing a genuine issue for trial. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

The court reviews all evidence and reasonable inferences in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The court, however, does not have a duty "to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports [the] claim."). Although the court needs to consider only the cited evidence, it is allowed to consider other materials in the summary judgment record. Fed. R. Civ. P. 56(c)(3).

"[C]onclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'" are not enough to defeat a properly supported motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). "[T]here must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### 4. *Summary Judgment Analysis*

#### A. FFCRA

The Emergency Paid Sick Leave Act (EPSLA, Division E of the FFCRA), Pub. L. 116-127, 134 Stat 195 (2020), § 5101, *et seq.*, is part of the FFCRA. The EPSLA requires employers to provide employees with paid sick time in certain circumstances related to COVID-19. FFCRA § 5102(a). An employer who violates § 5102 is considered to have failed to pay minimum wages in violation of Section 6 of the Fair Labor Standards Act (FLSA, 29 U.S.C. § 206) and is subject to the penalties in 29 U.S.C. §§ 216 and 217. FFCRA § 5105.

The EPSLA also prohibits employers from discharging, disciplining, or otherwise discriminating against an employee who takes leave in accordance with the EPSLA and has filed a complaint related to the EPSLA. FFCRA § 5104. An employer who willfully violates § 5104 is considered in violation of the FLSA, 29 U.S.C. § 215(a)(3), and is subject to the penalties in 29 U.S.C. §§ 216 and 217.

Lowe's and Willtrout argue that Gordon's claims under the FFCRA are time-barred.[1] ECF No. 103 at 5–8; ECF No. 104 at 4–7. Courts rely on the FLSA to interpret the EPSLA and its remedies. *Wilson v. Marshall Shredding LLC*, 616 F. Supp. 3d 633, 640 (W.D. Tex. 2022), *aff'd*, No. 22-50709, 2023 WL 3151078 (5th Cir. Apr. 28, 2023). The EPSLA does not include its own statute of

---

[1] Defendants mistakenly refer to the Family Medical Leave Act, which is relevant to a separate part of the FFCRA, but not directly relevant to the EPSLA. *See, e.g.*, ECF No. 103 at 5–6.

limitations, but at least one court has applied the statute of limitations under the FLSA to claims under the EPSLA. *Cruz v. Antezana & Antezana, LLC*, No. CV 23-3409, 2024 WL 3570372 (D. Md. July 25, 2024) (holding that the EPSLA incorporates the statute of limitations under the FLSA); *see also Stacey v. ValCap Group LLC*, No. 3:21-CV-01831, 2021 WL 6135486, at *2 (N.D. Tex. Dec. 27, 2021) ("the EPSLA incorporates the FLSA's private right of action, such that violations of the EPSLA are considered to be violations of the FLSA").

The FLSA imposes a two-year statute of limitations for non-willful violations of the FLSA. 29 U.S.C. § 255(a). "If a plaintiff can demonstrate that a defendant's violation of the FLSA was willful, then the limitations period is extended from two to three years." *Dacar v. Saybolt, L.P.*, 914 F.3d 917, 926 (5th Cir. 2018), *as amended on denial of reh'g and reh'g en banc* (Feb. 1, 2019); 29 U.S.C. § 255(a). Gordon brought her claims after the two-year, but before the three-year limitation period expired. ECF No. 81-32 ¶ 23 (stating that Gordon was terminated April 7, 2020); Original Compl., ECF No. 1 (filed November 27, 2022, approximately two years and seven months after Gordon's termination). Thus, Gordon's claims are barred unless they meet the willful violation standard.

A violation of the FLSA is willful when the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited." *Dacar*, 914 F.3d at 926 (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 134 (1988)). Evidence that a defendant was merely negligent regarding FFCRA requirements is insufficient to show willfulness. *Dacar*, 914 F.3d at 926; *Mohammadi v. Nwabuisi*, 605 F. App'x 329, 332 (5th Cir. 2015) ("Neither knowledge of the [statute's] potential applicability nor negligent or unreasonable conduct necessarily establishes willfulness.").

Gordon argues that her FFCRA claim is not barred because Defendants' actions were a willful violation of the FFCRA. ECF No. 111 at 15–17. The court previously found that Willtrout's actions did not constitute a willful violation of the Family and Medical Leave Act. ECF No. 96 at 10–12. Gordon argues that the willfulness analysis under the FLSA is different from the willfulness analysis that the court already applied under the FMLA because, to obtain EPSLA leave, employees were required to obtain approval from their manager. ECF No. 111 at 14–15. Gordon argues that an employee in Gordon's circumstances could not submit a request online without prior manager approval.[2] *Id.*

Taking as true Gordon's argument that Willtrout's approval was necessary to obtain EPSLA leave, Gordon has not met her burden to show a willful violation of the FFCRA. Gordon testified that she tried to talk to Willtrout about taking leave on multiple occasions over a few days. ECF No. 81-38 at 160:3–24. Willtrout responded multiple times by saying, "Okay. I'm going to talk to you." *Id.* Willtrout never followed up with Gordon and "[i]t was kind of like he was avoiding [Gordon] for a long period of time[.]" *Id.* at 160:21–22; ECF No. 81-32 ¶ 20. Gordon stated that she could never actually submit an emergency paid leave request to Lowe's because Willtrout would not talk with her about it, which Gordon asserts Lowe's required prior to submitting the form. *Id.* at 162:21–25.

Viewed in the light most favorable to Gordon, the evidence does not demonstrate that Willtrout willfully violated the EPSLA. At most, it appears that Willtrout ignored Gordon for a few days

---

[2] The evidence does not support Gordon's argument. Lowe's Emergency Paid Leave Procedure stated that, if an employee was unable to access the online HR portal to request emergency paid leave, they could call the Associate Care Center to request emergency paid leave. ECF No. 103-5 at 6. No party addressed this alternative in the briefing before the court. Thus, the court does not rely on this evidence to reach its conclusion.

and delayed attending to her request. There is no evidence that Willtrout actually refused Gordon's request. Although Willtrout's actions might have been negligent or irresponsible, there is insufficient evidence to support a finding that he recklessly or knowingly violated the EPSLA. Again, negligence is insufficient to satisfy Gordon's burden of proof at this stage. Gordon's subjective belief that Willtrout's intent was to unlawfully deny her leave is insufficient. Lowe's and Willtrout's motions should be granted as to Gordon's FFCRA claims.

### B. Section 1981

Gordon alleges claims of race discrimination, retaliation, and harassment and hostile work environment in violation of 42 U.S.C. § 1981. ECF No. 28 at 15. Gordon states that she does not oppose Willtrout's motion as to her § 1981 claims. ECF No. 111 at 7 n.1. Thus, as to those claims, Willtrout's motion should be granted.

The court turns to Gordon's § 1981 claims as to Lowe's. The analysis of Gordon's alleged claims under § 1981 is the same as the analysis for those claims under Title VII of the Civil Rights Act of 1964. *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399 (5th Cir. 2021).

When based on circumstantial evidence, claims for discrimination and retaliation are analyzed under the burden-shifting approach outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Saketkoo v. Adm'rs. of Tulane Educ. Fund*, 31 F.4th 990, 997, 1000 (5th Cir. 2022) (applying the burden-shifting approach to retaliation and discrimination claims).

The burden-shifting approach places the initial burden on the plaintiff to establish a prima facie case of discrimination or retaliation. *Saketkoo*, 31 F.4th at 999. If the plaintiff meets the initial burden, the defendant must respond by providing a legitimate, nondiscriminatory reason for its action. *Id.* If the

defendant meets its burden, the employee must produce evidence showing that the proffered reason is pretextual. *Id.*

### i. Retaliation

"A plaintiff's ultimate burden in the retaliation context is to prove that but-for the employer's improper retaliatory motive, the allegedly retaliatory employment action would not have occurred." *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 547 F. App'x 484, 488 (5th Cir. 2013). A plaintiff can discharge this burden with direct or circumstantial evidence. *Manaway v. Med. Ctr. of Se. Tex.*, 430 F. App'x 317, 324 (5th Cir. 2011).

Gordon does not provide any direct evidence of retaliation. Thus, the court applies the *McDonnell Douglas* framework. *See Johnson*, 7 F.4th at 407. To establish her prima facie case of retaliation, Gordon must show that: (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there is a causal connection between the two. *Id.* at 407–08; *Saketkoo*, 31 F.4th at 998–1000.

Lowe's argues that Gordon cannot show that she engaged in a protected activity. ECF No. 103 at 18–19; ECF No. 104 at 17–18. Engaging in a protected activity includes opposing any practice made unlawful by § 1981, as well as making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing under § 1981. *Anderson v. La. Dep't of Transp. & Dev.*, 836 F. App'x 304, 307 (5th Cir. 2020). Stating a belief that discrimination has occurred is almost always opposition. *Wallace v. Performance Contractors, Inc.*, 57 F.4th 209, 224 (5th Cir. 2023).

Gordon states in her Second Declaration that she "specifically told" HR that she believed Nickelson treated her worse because she was a Black woman. ECF No. 111-1 ¶ 10. Gordon also stated that she "told [HR] that Mr. Nickelson did not treat the other associates the same way that he treated the black

women[.]" *Id.* ¶ 11. Taking Gordon's statement as true,[3] Gordon engaged in a protected activity. Lowe's did not argue that Gordon cannot present her prima facie case of retaliation as to any other element.

Thus, the burden shifts to Lowe's to provide a legitimate, nonretaliatory reason for Gordon's termination. Lowe's presents evidence that Gordon was terminated because she was insubordinate when she refused to work at the front cash registers on multiple occasions. ECF No. 103-7 (Lowe's "Termination Conduct" form stating that Gordon was insubordinate and refused to work at the registers). Insubordination is a legitimate, nonretaliatory reason for termination. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 476 (5th Cir. 2015).

Thus, the burden shifts back to Gordon to show that Lowe's proffered reason for her termination is a pretext for retaliation. In the context of a retaliation claim, pretext turns on whether the protected conduct was the "'but for' cause of the adverse employment decision." *Owens v. Circassia Pharm., Inc.*, 33 F.4th 814, 835 (5th Cir. 2022) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996)). "[E]ven if a plaintiff's protected conduct is a substantial element in a defendant's [adverse employment action], no liability for unlawful retaliation arises if the employee would have [undergone that action] even in the absence of the protected conduct." *Long*, 88 F.3d at 305 n.4 (citation omitted). A plaintiff may meet their burden to show pretext by combining suspicious timing with other significant evidence of pretext.

---

[3] Lowe's objects to this portion of Gordon's Second Declaration because Gordon never mentioned complaining about mistreatment based on race in her deposition, First Declaration, or in any contemporaneous reports. ECF No. 117 at 6–7. The court agrees that Gordon's insertion of this issue into her Second Declaration is concerning. But, as stated above, the court need not reach Lowe's objection because even considering the Second Declaration in full, Lowe's motion should be granted. Thus, the objection is moot.

*Owens*, 33 F.4th at 835. The court must consider whether a plaintiff's evidence is sufficient for a reasonable jury to find but-for causation. *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020), *as revised* (Aug. 14, 2020).

Gordon argues that Lowe's reason for her termination is pretext for retaliation. ECF No. 111 at 25–29. In support, Gordon argues that (1) her reluctance to work the cash register was justified, (2) Nickelson engaged in threatening and intimidating conduct demonstrating that he intended to retaliate against Gordon for her complaint, (3) Lowe's did not follow its progressive discipline policy, and (4) Gordon's termination occurred abruptly after nearly twenty years of positive performance and within weeks of her protected activity. *Id.*

Taken together, Gordon's evidence does not raise a material fact dispute as to whether her protected conduct was a but-for cause of her termination. There is no evidence that would support a rational inference that Gordon's termination was based on retaliation.

Gordon argues that "[a] reasonable juror could determine that Gordon's concerns about working the register were justified." ECF No. 111 at 26. Even if Gordon's reasons for declining to work at the register were "justified," she nonetheless told multiple managers that she would not perform the work they asked of her. Gordon's belief as to why she refused to work the registers does not affect whether *Lowe's* reason for terminating her lacked substance or credibility.

Gordon argues that Nickelson acted in a manner that was probative of his retaliatory intent. ECF No. 111 at 27. Gordon states in her declaration that, after she reported Nickelson, Nickelson confronted Gordon about her complaint. ECF No. 81-32 ¶ 18. Nickelson showed Gordon that a complaint had been made against him and told Gordon that he knew she had "called in"

against him. *Id.* The evidence does not show that Nickelson's knowledge of Gordon's complaint played any role in Gordon's termination. Willtrout testified that the District Manager, Danny Pavelka, recommended that Gordon be terminated after she stated multiple times that she would not work the registers. ECF No. 81-31 at 210:21–212:6. Willtrout supported the recommendation. *Id.* Then, Nickelson wrote the recommendation and sent it to Associate Relations, and Courtney Fuller in Associate Relations approved the termination. *Id.*

Gordon does not argue or identify any evidence showing that Pavelka or Fuller knew of Gordon's protected activity prior to her termination. There is no evidence that Nickelson's knowledge of Gordon's protected activity affected Pavelka or Fuller's decisions. Gordon does present evidence of which relevant decisionmakers knew of her protected activity when she was terminated. If an employer is unaware of an employee's protected conduct at the time of the adverse action, the employer could not have retaliated against the employee based on that conduct. *Cephus v. Tex. Health & Human Services Comm'n*, 146 F. Supp. 3d 818, 834–35 (S.D. Tex. 2015). "[E]vidence of generalized discussions between a decisionmaker and someone with knowledge of the plaintiff's protected activity creates only a speculative inference regarding the decisionmaker's awareness." *Equal Employment Opportunity Comm'n v. EmCare, Inc.*, 857 F.3d 678, 683 (5th Cir. 2017).

Gordon's argument that Lowe's failure to follow its progressive discipline policy is evidence of pretext is not persuasive. "[W]hen an employer opts to have a disciplinary system that involves warnings, failure to follow that system may give rise to inferences of pretext." *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 477 (5th Cir. 2015). However, failing to follow discretionary discipline policies does not provide relevant information about pretext. *Salazar v. Lubbock Cnty. Hosp. Dist.*,

982 F.3d 386, 391 (5th Cir. 2020) (stating that "digression from the terms of its [discretionary] policy is therefore of little value to our analysis"); *see also Taylor v. Peerless Indus. Inc.*, 322 F. App'x 355, 367 (5th Cir. 2009).

Lowe's Corrective Action Procedure provides for the use of discretion. It states that "Progressive disciplinary action at Lowe's is normally administered in four steps: Initial, Written, Final, and Termination. A step in the process may be skipped depending on the nature and severity of the situation." ECF No. 81-30 at 1. It goes on to state that "[t]he matrix below should be used as a guide to determine the appropriate level of discipline. Corrective action may be administered at any level depending on the circumstances, nature, and severity of the situation." *Id.* at 2.

The Fifth Circuit has found that similar language provides for the use of discretion and stated that "digression from the terms of [the] policy is therefore of little value to our analysis." *Salazar*, 982 F.3d at 391 (finding that a progressive discipline policy was discretionary where it stated that levels of discipline were recommendations and allowed management to impose the level of discipline deemed appropriate under specific sets of circumstances).

Willtrout testified that Gordon's termination occurred without prior corrective action because of how she refused to work at the registers. ECF No. 81-31 at 213:10–24. According to Willtrout, if a manager had asked Gordon to go work a register and Gordon failed to do so, "that would be different." *Id.* Instead, Willtrout testified that Gordon "blankly just told managers that she wasn't doing it," which is why her discipline "turned into immediate termination." *Id.* Gordon's flat refusal to complete a task on multiple occasions led the District Manager to recommend that Gordon be terminated. ECF No. 81-31 at 211:20–212.

Here, as in *Salazar,* Lowe's failure to implement the first three steps of disciplinary action prior to Gordon's termination does not demonstrate pretext. The evidence shows that Gordon refused to work at the cash registers when she was asked to. ECF No. 81-32 ¶ 22. Lowe's termination was within its business discretion.

Gordon's "termination in context" argument is insufficient to raise a fact issue as to pretext. Gordon argues that her long "history of positive performance was erased" when she engaged in a protected activity. However, "[t]emporal proximity combined with positive performance reviews prior to the protected activity is insufficient [to survive a motion for summary judgment]." *Brown,* 969 F.3d at 581. In context, Gordon had an issue with working the registers, which led to her making a complaint about Nickelson's racial bias. She then refused again to work the registers, and the District Manager had her terminated. There is no connection at all between her complaint and her termination.

The evidence, viewed together and in the light most favorable to Gordon, would not allow a reasonable jury to find that but-for Gordon's protected activity, she would not have been terminated. Accordingly, Lowe's motion as to Gordon's retaliation claim should be granted.

### ii. Discrimination

Gordon does not present any direct evidence of discrimination based on her race. Thus, the court applies the *McDonnell Douglas* framework. *See Ernst v. Methodist Hosp. Sys.,* 1 F.4th 333, 339 (5th Cir. 2021).

To establish a prima facie case of race discrimination with circumstantial evidence, Gordon must show that she (1) is a member of a protected group, (2) was qualified for her position, (3) was subject to an adverse employment action, and (4) was replaced by someone outside her protected group or was treated less

favorably than other similarly situated employees outside her protected group. *Ernst*, 1 F.4th at 339.

Lowe's argues that "to succeed on a § 1981 discrimination claim, intentional discrimination must be demonstrated." ECF No. 103 at 13–14. It is not clear which elements of Gordon's prima facie case Lowe's takes issue with. Thus, assuming that Gordon met her burden to establish her prima facie case, the burden shifts to Lowe's to present a legitimate, nondiscriminatory reason for Gordon's termination.[4]

As the court already found, Lowe's presented evidence that Gordon was terminated due to insubordination, which is a legitimate, nondiscriminatory reason for Gordon's termination. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 476 (5th Cir. 2015); *see* ECF No. 103-7 (Lowe's "Termination Conduct" form).

Thus, the burden shifts back to Gordon to present evidence sufficient to establish a genuine issue of material fact about whether Lowe's asserted reason for termination is pretext. *Owens*, 33 F.4th at 826. The evidence must allow fair-minded factfinders to reach different conclusions about whether Lowe's proffered reason was, in fact, the reason for Gordon's termination. *Id.* A plaintiff can meet her burden to show pretext with circumstantial evidence, including evidence of disparate treatment or evidence tending to show that the employer's explanation is unworthy of credence. *Id.* But the ultimate determination is whether, viewing all of the evidence in a light most favorable to the plaintiff, a reasonable factfinder could infer discrimination. *Id.* (citing *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000)).

---

[4] The parties do not argue that Gordon was subject to any adverse employment action other than her termination.

In her pretext arguments as to discrimination, Gordon incorporates by reference her pretext arguments as to retaliation. The entirety of Gordon's pretext argument as to discrimination is as follows:

> For the same reasons discussed in the context of Gordon's retaliation claim above, there are also disputes of fact concerning ultimate causation in the context of Gordon's disparate treatment claim, including whether Lowe's explanation is pretextual, which a jury must resolve.

ECF No. 111 at 31. The court has already analyzed Gordon's pretext arguments as to retaliation and found that Gordon did not meet her burden to establish a fact question. The same is true here. The court will not duplicate the same analysis here.

For a discrimination claim, the ultimate determination is whether a reasonable factfinder could infer discrimination. The evidence is insufficient to create a fact question about whether Lowe's reason for terminating Gordon was pretext. No reasonable factfinder could infer that Gordon's termination was based on discrimination. Thus, Lowe's motion should be granted as to Gordon's discrimination claim.

### iii. Hostile Work Environment

To establish the prima facie case for a hostile work environment, Gordon must show that she (1) is a member of a protected group; (2) suffered unwelcome harassment; (3) the harassment was based on her membership in the protected group; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

Lowe's argues that Gordon cannot establish her prima facie case of a hostile work environment. In its motion and reply, Lowe's

does not clarify which elements of the hostile work environment claim are at issue. ECF No. 118 at 7–10. In response to Lowe's motion, Gordon argues that "[t]he only element of Gordon's claim on which Lowe's conceivably moved is the based on race element." ECF No. 111 at 29. The court agrees. Lowe's cites generally to the law regarding a hostile work environment, but it appears that Lowe's only takes issue with the third element—that harassment was based on Gordon's race. *See* ECF No. 103 at 12–14.

Gordon, for her part, does not clearly identify which acts she contends constitute harassment. Neither party addresses the issue. It is very difficult for the court to analyze whether harassment was based on race without Plaintiff first identifying what harassment she endured. The court understands that Gordon described the harassment, at least in part, as follows:

> [Nickelson] would talk down or be disrespectful to me. He would get mad at me. He would make me get him his lunch or try to get me to do his assignments, and if I didn't do them, he would get mad and punish me. He deliberately ignored my medical concerns. He would scream at me in public. He would tell me: "you do as I say so."

ECF No. 111-1 ¶ 7. The court is skeptical that this type of conduct constitutes harassment sufficient to create a hostile work environment. It also does not appear that any harassment affected a term, condition, or privilege of Gordon's employment.[5]

---

[5] For harassment to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive" and create an abusive working environment. *Gibson v. Verizon Services Org., Inc.*, 498 F. App'x 391, 394 (5th Cir. 2012). This is an objective standard, and it requires that a reasonable person would find the environment hostile or abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" are not enough to alter the terms and conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation and internal quotation marks omitted).

Assuming, without deciding, that the identified conduct rises to the level of harassment, the court turns to whether Gordon has presented evidence that the harassment she endured was based on her race.

To survive Lowe's motion for summary judgment, Gordon must show that her harassment was based on race. *Hernandez,* 670 F.3d at 651. The summary judgment evidence must "reasonably support an inference that [plaintiff] was subjected to harassment based on [her] membership in a protected group." *Chen v. Ochsner Clinic Found.,* 630 F. App'x 218, 224–25 (5th Cir. 2015). Harassment motivated by something other than a plaintiff's race lies beyond the scope of § 1981. *See Stingley v. Watson Quality Ford, Jackson, MS,* 836 F. App'x 286, 289 (5th Cir. 2020). "Poor treatment without more is not sufficient to show harassment based on race, even if [the plaintiff] believes race to be the motivating factor for the poor treatment." *Eaton-Stephens v. Grapevine Colleyville Indep. Sch. Dist.,* 715 F. App'x 351, 356 (5th Cir. 2017). The basis of harassment may be established through concrete examples of racial discrimination or animus. *Ramsey v. Henderson,* 286 F.3d 264, 269 (5th Cir. 2002); *see also Melvin v. Barr Roofing Co.,* 806 F. App'x 301 (5th Cir. 2020) ("racial slurs are certainly based on race"). Facts may also allow a reasonable inference that plaintiff was harassed because of their race based on the context of the harassment. *E.E.O.C. v. WC&M Enterprises, Inc.,* 496 F.3d 393, 398–99 (5th Cir. 2007).

Gordon does not connect her harassment to her race. Gordon's subjective belief that the harassment was based on her race is not sufficient to defeat a motion for summary judgment. It is not enough to establish that Gordon is a member of a protected group and that she has been harassed. *Stingley,* 836 F. App'x at 288–89 (citing *Byrnes v. City of Hattiesburg,* No. 15-CV-19, 2016 WL 1090613, at *2 (S.D. Miss. Mar. 18, 2016), *aff'd,* 662 F. App'x

288 (5th Cir. 2016)). Gordon must show that she was harassed *because* of her membership in a protected class. *Id.* (emphasis in original). The incidents Gordon alleges have no connection to her race. *See Chen,* 630 F. App'x at 224–25. Aside from very general assertions, Gordon does not demonstrate how the context of her harassment shows that her harassment was based on race.

On March 24, the day that Nickelson told Gordon to work the registers, Gordon reported to Associate Relations that Nickelson acted in an unprofessional manner and that he would get upset and yell at associates. ECF No. 81-35 at 2. The report does not mention race.

In May 2020, Associate Relations interviewed witnesses about Gordon's complaint and termination. ECF No 81-35 at 20–21. One witness stated that Nickelson acted "ugly in general" and that he was "rude for no reason." *Id.* Another witness stated that Nickelson was arrogant and ran the team like a dictatorship. *Id.* at 24. That witness stated that if anyone spoke up, they became a target. *Id.* The witnesses did not tie the mistreatment to race.

Gordon stated in her first declaration that Nickelson showed disdain for women and people with disabilities. ECF No. 81-32 ¶¶ 7–8. She stated "I believe I was unlawfully discriminated against based on my race, gender and disability status." *Id.* ¶ 25.

Gordon testified in her deposition that she could not recall anyone at Lowe's ever making any negative remarks regarding her race. ECF No. 81-38 at 177:6–10. Gordon also stated in her deposition that Nickelson "targeted a lot of females, Black females[.]" *Id.* at 172:3–10.

Gordon states in her second declaration that she observed Nickelson treat Black women worse than he treated other employees. ECF No. 111-1 ¶¶ 5–6. Gordon explains that Nickelson targeted Black women for mistreatment, "bossed around" Black

women, and seemingly "did not like for Black women to have a voice or authority." *Id.* ¶ 8.

The evidence falls short of creating a fact issue as to whether Gordon's harassment was based on her race. The Fifth Circuit has affirmed summary judgment on a hostile work environment claim where Plaintiffs testified that Black employees were treated differently than non-Black employees and that managers were manipulative, condescending, and would bully Black employees. *Yarbrough v. SlashSupport, Inc.,* 152 F.4th 658, 665 (5th Cir. 2025). The court found that "the only links to race were conclusory assertions that [Defendant] singled out black employees for enforcement." *Id.* Thus, the Fifth Circuit held that Plaintiffs had offered no competent summary judgment evidence that any harassment was based on race. *Id.*

The Fifth Circuit has also held that summary judgment is proper where "the incidents alleged by [Plaintiff] had no clear connection to [] race" and did not "reasonably support an inference that [Plaintiff] was subjected to harassment based on [] membership in a protected group." *Chen v. Ochsner Clinic Found.,* 630 F. App'x 218, 224–25 (5th Cir. 2015).

The general harassment that Gordon identifies is in no way tied to her race aside from Gordon's subjective belief that her race motivated Nickelson. Gordon's testimony is that Nickelson treated her and other Black women worse than other employees. This general statement, however, does not create a fact issue as to *Gordon's* harassment. It appears that Nickelson was rude and unprofessional to many employees and may have harassed many of them for various reasons. Gordon does not provide any concrete examples of Nickelson's racial discrimination or animus. She does not provide context that would allow a reasonable inference that she was harassed because of her race. Gordon's belief that her race was the motivating factor for her poor treatment does not create a

fact question as to whether her harassment was based on race. *Eaton-Stephens*, 715 F. App'x at 356.

The evidence supports a finding that Nickelson may have harassed several Lowe's employees. However, "[h]ostile work environment claims are not intended to function as a 'general civility code.'" *Allen v. Our Lady of the Lake Hosp., Inc.*, No. 22-30546, 2023 WL 3267840, at *4 (5th Cir. May 5, 2023). Gordon has not presented evidence that would allow a reasonable inference that her harassment was based on her race. Because the evidence does not raise genuine fact issue as to Gordon's hostile work environment claim, Lowe's motion should be granted.

### 5. *Motion to Sever*

Lowe's and Willtrout filed a motion asking the court to sever Gordon's claims from her co-plaintiff's claims. Because the court recommends that Lowe's and Willtrout's motions be granted, the Motion to Sever is **DENIED** as **MOOT** without prejudice.

### 6. *Conclusion*

The summary judgment record does not raise a genuine issue of material fact as to any of Gordon's remaining claims. The court recommends that Lowe's and Willtrout's summary judgment motions, ECF Nos. 103 and 104, be **GRANTED**. Because the court's conclusions are not impacted by consideration of Plaintiff's summary judgment evidence, Defendant's objections are **DENIED** as **MOOT**. The Motion to Sever is also **DENIED** as **MOOT**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on November 24, 2025.

Peter Bray
United States Magistrate Judge